## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CICI ENTERPRISES, LP,**

     **Plaintiff,**

**v.**                                    **Case No.: _____**

**FOUR WORD MOTION, LLC; 321**         **INJUNCTIVE RELIEF REQUESTED**
**PIZZA COMPANY, LLC; TON OF**
**PIZZA, LLC; MILTON J. WORD;**
**MICHAEL A. JOHNSON; C-LOS**
**PIZZA CO., and CARLOS COLON.**

     **Defendants.**
_____/

## PLAINTIFF CICI ENTERPRISES, LP'S
## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff CiCi Enterprises, LP ("Cicis"), by and through undersigned counsel, sues Defendants Four Word Motion, LLC; Ton of Pizza, LLC; Milton J. Word; Michael A. Johnson; C-Los Pizza Co., and Carlos Colon, and alleges as follows:

### NATURE OF THE ACTION

### Former Cicis Store No. 202

1.    Defendants Four Word Motion, LLC, Milton J. Word, and Michael A. Johnson are former Cicis franchisees who, since 2006, operated a Cicis Pizza restaurant, Store No. 202, in Melbourne, Florida.

2.    After the Four Word Motion, LLC was advised that the Franchise Agreement would not be renewed when it ended on December 30, 2016, it ceased operation of Store 202 on or about August 25, 2016, which is a Material Breach of the Franchise Agreement.

3.      On August 4, 2016, Mr. Word filed paperwork with the Florida Department of State, Division of Corporations and created 321 Pizza Company, LLC, with its principal place of business being the address of Cicis Store No. 202.  On September 7, 2016, Mr. Word filed paperwork to voluntarily dissolve 321 Pizza Company, LLC.

4.      On August 27, 2016, Mr. Word re-opened Store 202, now called 321 Pizza, which is a knock-off, Cicis Pizza-like restaurant at the exact same location, using Cicis Trade Dress and confidential information, in violation of federal trademark law, Florida law and the terms of the Franchise Agreement.

5.      On August 30, 2016, Cicis sent Mr. Word and Four Word Motion, LLC, a Notice of Termination which immediately terminated the Franchise Agreement for Cicis Store No. 202.  The termination was the result of, among other things, ongoing and uncured breaches of the Franchise Agreement and the breaches of the Confidentiality and Non-Compete covenants in the Franchise Agreement that resulted from Mr. Word and Four Word Motion, LLC's operation of 321 Pizza.  The Notice of Termination contained a demand to immediately cease and desist operation of 321 Pizza and a demand to pay all monies due and owing under the Franchise Agreement.

6.      Mr. Word continues to operate 321 Pizza despite having received the cease and desist demand.

7.      Mr. Word may also be attempting to conceal his improper operation of 321 Pizza by having his former manager, Carlos Colon, create an entity called C-Los Pizza Co. to ostensibly operate 321 Pizza.

8.      If C-Los Pizza Co. and Mr. Colon are indeed operating 321 Pizza as a knock-

off, Cicis Pizza-like restaurant at the exact same location, their use of Cicis Trade Dress and Cicis trade secrets and confidential information is in violation of federal trademark law and Florida law.

9.      Four Word Motion, LLC, Mr. Word, and Mr. Johnson owe Cicis various monies due under the Franchise Agreement and liquidated damages for improper termination of the Franchise Agreement.

**Former Cicis Store No. 194**

10.     Defendants Ton of Pizza, LLC, and Mr. Word are former Cicis franchisees who, since 2006, operated a Cicis Pizza restaurant, Store No. 194, in Orange City, Florida.

11.     On September 9, 2016, Cicis sent Ton of Pizza, LLC, and Mr. Word a Notice of Termination which immediately terminated the Franchise Agreement for Cicis Store No. 194.  The termination was the result of, among other things, ongoing and uncured breaches of the Franchise Agreement, failure to cure payment defaults related to the operation of Store No. 202,  and the breaches of the Confidentiality and Noncompetition Covenants in the Franchise Agreement that resulted from Mr. Word's involvement in the operation of 321 Pizza.  The Notice of Termination contained a demand to immediately cease & desist operation of Cicis Store No. 194.

12.     After Store No. 194's Franchise Agreement was terminated, Milton Word and Ton of Pizza, LLC, continued to operate a knock-off, Cicis Pizza-like restaurant at the exact same location, under the "Cicis Pizza" signage and using Cicis trademarks and confidential information, in violation of federal trademark law, Florida law and the terms of the Franchise Agreement.

13.     They continue to operate Cicis Store No, 194 as a Cicis restaurant despite having received the Cease and Desist Demand.

## PARTIES

14.     Cicis is a Delaware limited partnership with its principal place of business in Texas.

15.     Defendant Four Word Motion, LLC, is a Florida corporation which has its principal place of business at 1270 N. Wickham Rd., Ste. 46-B, Melbourne, Florida.

16.     Defendant 321 Pizza Company, LLC,  is a Florida corporation, created on August 4, 2016 and voluntarily dissolved on September 7, 2016, which also has its principal place of business at 1270 N. Wickham Rd., Ste. 46-B, Melbourne, Florida

17.     Defendant Ton of Pizza, LLC, is a Florida Corporation which has its principal place of business at 2448 S. Volusia Ave., Orange City, Florida.

18.     Defendant Milton Word is an individual domiciled in Lake Helen, Florida. He is the registered agent and managing member for Four Word Motion, 321 Pizza, and Ton of Pizza.

19.     Defendant Michael Johnson is an individual domiciled in Orange City, Florida.

20.     Defendant C-Los Pizza Co. is a Florida Corporation which has its principal place of business at 3815 N. US 1, Unit 105, Cocoa, Florida 32926.

21.     Defendant Carlos Colon is an individual domiciled in Cocoa, Florida.  He is the registered agent for C-Los.

**JURISDICTION AND VENUE**

22.     Jurisdiction of this matter is proper with this Court under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and/or 1367.   This matter is a civil action arising under the Constitution, laws, or treaties of the United States.  This matter also is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

I.     **CICIS MARKS AND THE SYSTEM**

24.     Cicis is a widely-known national franchisor that grants qualified individuals and entities a limited license to establish and operate Cicis Pizza restaurants.

25.     Since as early as 1985, Cicis has continuously owned, used, promoted and licensed "Cicis" appearing in various forms and logos in connection with the restaurant services and food and beverage products offered and sold in connection with restaurants and franchises.  Among other uses, Cicis has used the Cicis marks as follows (collectively, the "Common Law Marks"):

| Trademark/Service Mark | Goods and Services |
|---|---|
| CICIS | Restaurant services; Restaurant take-out services;  Italian food for consumption on and off premises;  Hot and cold beverages; Pizza, pasta, salads, desserts, cinnamon rolls, bread sticks, brownies, pastries, and dipping sauces. |

| FIERY MANGO TANGO | Pizza |
|---|---|
| BEYOND PIZZA | Pizza, Pasta, Cinnamon Rolls<br><br>Restaurant services |
|  | Pizza, Pasta, Cinnamon Rolls<br><br>Restaurant services |
|  | Pizza, Pasta, Cinnamon Rolls<br><br>Restaurant services |
|  | Pizza, Pasta, Cinnamon Rolls<br><br>Restaurant services |
| CICIS | Bread Sticks, Brownies, Cinnamon Rolls, Pasta, Pastries, Pizza<br><br>Restaurant services |

26.     Cicis has been using and continues to use the Common Law Marks in commerce in connection with the goods and services identified above.

27.     Cicis is the sole lawful and exclusive owner of the following federal trademark and service mark registrations, as well as several other related marks registered on

the Principal Register of the United States Patent and Trademark Office (collectively, the "Federal Registrations"):

| MARK | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| CICI'S | 1,712,523 | September 1, 1992 | Restaurant services |
| CICI'S | 2,680,694 | January 28, 2003 | Pizza |
| CICIS BUFFET ON THE GO | 3,727,837 | December 22, 2009 | Restaurant services; Take-out restaurant services |
| CICI'S NOW | 3,457,090 | July 1, 2008 | Restaurant services |
|  | 3,457,868 | July 1, 2008 | Restaurant services |
|  | 4,341,504 | May 28, 2013 | Restaurant services |
| CICI'S PIZZA COUNTER | 4,66,7731 | January 6, 2015 | Restaurant services |

| MARK | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
|  | 4,667,732 | January 6, 2015 | Restaurant services |
|  | 3,293,786 | September 18, 2007 | Pizza, Pasta, Cinnamon Rolls; Restaurant services |
|  | 4,341,505 | May 28, 2013 | Restaurant services |
|  | 4,341,506 | May 28, 2013 | Restaurant services |
|  | 3,251,151 | June 12, 2007 | Pizza, Pasta, Cinnamon Rolls; Restaurant and delivery services |

| MARK | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| DRINK UP SUMMER | 4,591,695 | August 26, 2014 | Conducting contests and sweepstakes;<br><br>Restaurant services |
| ENDLESS PIZZA ENDLESS VALUE | 4,670,494 | January 13, 2015 | Restaurant services |
| BETTER. BELIEVE IT. | 4,878,388 | December 29, 2015 | Pizza, Pasta, Cinnamon Rolls;<br><br>Restaurant services; Take-out restaurant services |

28.    Cicis has continuously used the Federal Registrations in commerce in connection with the goods and services identified above.   Federal Registration numbers 1,712,523; 2,680,694; 3,457,090; 3,457,868; 3,293,786; 3,251,151, and 3,727,837 have attained incontestable status under 15 U.S.C. §§1065 and 1115(b).

29.    Cicis is the sole lawful and exclusive owner of the following trademark and service mark registrations in the State of Florida (collectively, the "State Registrations"):

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
|  | T12000000957 | September 28, 2012 | Restaurant services |
|  | TI2000000958 | September 28, 2012 | Restaurant services |
|  | T1000001182 | September 28, 2012 | Restaurant services |
|  | T1000001183 | September 28, 2012 | Restaurant services |

30.     Cicis has continuously used the State Registrations in commerce in the State of Florida in connection with the goods and services identified above.  Collectively, the Common Law Marks, the Federal Registrations, and the State Registrations are "Cicis

10

Marks."

31.     Cicis is the sole lawful and exclusive owner of trade dress rights in and to the distinctive exterior and interior design, décor, and furnishings; the look-and-feel, layout, design, color schemes; and other visual source indicia embodied in each of Cicis restaurant locations (collectively, the "Trade Dress").   The Trade Dress comprises at least the distinctive and consistent color palette used in the branding and décor of Cicis restaurants, the finish décor of the restaurants, such as the color, texture, placement, style, and arrangement of tile, laminate, glass, grout, paint, panels, displays, menu boards, furniture, and signage, as well as the selection, arrangement, and layout of the entry area, ordering area, dining room, and other features, such as countertops, buffet lines, and other related features, as displayed by the exemplary photographs below:

















32.     Cicis System is identified by and comprises, without limitation, Cicis Marks and the Trade Dress, in addition to other trade names, service marks, trademarks, logos, insignia, slogans, emblems, designs and commercial symbols as Cicis may develop from time to time to identify for the public the source of services and products marketed under such marks and under the system and representing the system's high standards of quality, appearance and service and distinctive exterior and interior design, décor and color scheme and furnishings (collectively, the "Cicis System").  Cicis System further includes, without limitation, certain confidential or proprietary information, trade secrets, knowledge, and know-how concerning the methods of conducting the business contemplated by the Franchise Agreement, including, without limitation, special recipes, ingredients, and menu items; uniform standards, specifications, policies and procedures for operations; quality and uniformity of products and services offered; procedures for inventory, management and financial control; training and assistance; advertising and promotional programs; and the methods of operating a Cicis Pizza restaurant and other information contained in the Manuals or otherwise disclosed in writing ("Confidential Information").

33.     Under the Cicis System, restaurants conduct business under a uniform business format, utilizing Cicis goodwill, trade secrets, recipes, methodology, specially designed equipment and specifications for the preparation and sale of pizza and other authorized food and beverage products.

34.     Cicis continues to develop, use and control the use of the Cicis Marks in order to identify for the public the source of services and products marketed thereunder and under the Cicis System, and to represent the Cicis System's high standards of quality, appearance

and service.

35.     Cicis licenses franchisees to use the Cicis Marks and the Cicis System to develop and operate Cicis Pizza restaurants under development and franchise agreements.

36.     Since approximately 1985, Cicis and its authorized licensees have used the Cicis Marks and the Cicis System to identify its pizza restaurants and to distinguish them from those operated by competitors.

37.     Cicis currently spends in excess of $26,000,000 annually on the production and placement of local and national promotion and advertising.

38.     There are currently more than 430 Cicis restaurants operating in 33 different states.

39.     As a result of the expenditure and investment of substantial time, skill, effort and money, the consuming public has come to recognize: (i) Cicis as the sole and exclusive owner of the Cicis System as a distinctive source for the operation of restaurants featuring an "All You Care to Eat" buffet and offering dine-in and carry out pizza and other Italian foods and related items; and (ii) Cicis as the sole and exclusive provider of goods and services in connection with Cicis Marks and the Trade Dress.

## II.     MILTON WORD, TON OF PIZZA, LLC, AND CICIS STORE 194

### A.     Background

40.     On or about December 5, 2006, Cicis entered into a Franchise Agreement with Ton of Pizza, LLC ("Ton of Pizza"), for Cicis Pizza restaurant No. 194 located at 2448 Volusia Ave., Orange City, Florida 32763 ("Cicis Store No. 194").  A copy of the Franchise Agreement is attached hereto as Exhibit A.

41.     Milton Word ("Mr. Word") is the principal of Ton of Pizza.

42.     In connection with Ton of Pizza's execution of the Franchise Agreement, Mr. Word also executed a Guaranty in which he agreed to be designated as the "Controlling Principal" of Ton of Pizza and thereby be bound by all obligations of the "Controlling Principal" as set forth in the Franchise Agreement.  A copy of the Guaranty is attached hereto as Exhibit B.

43.     In the Guaranty, Mr. Word also agreed to be bound by all of Ton of Pizza's obligations under the Franchise Agreement.

44.     In the Guaranty, Mr. Word also agreed to be designated as the Operating Principal of Ton of Pizza and thereby agreed to be bound by all of the obligations of the "Operating Principal" as set forth in the Franchise Agreement.

45.     The Franchise Agreement contains a Confidentiality Covenant which, among other things, prohibits Mr. Word and Ton of Pizza from disclosing or using for their own benefit any of Cicis Confidential Information, including trade secrets, and knowledge or know-how concerning the methods of conducting, establishing and operating a Cicis Pizza restaurant, following the termination of the Franchise Agreement.  *See* Exhibit A at § X.B (the "Confidentiality Covenant").

46.     The Franchise Agreement also contains a Noncompetition Covenant which, *inter alia*, prohibits Mr. Word and Ton of Pizza from owning or operating a Cicis-like pizza buffet restaurant within a twenty mile radius of the former Cicis Store No. 194 for a period of two years following the termination of the Franchise Agreement.  This Noncompetition Covenant also prohibits Mr. Word and Ton of Pizza from employing any person who was

within the preceding sixty (60) days employed by a Cicis franchisee.  *See* Exhibit A at §
X.C.2 (the "Noncompetition Covenant").

**B.      Termination of the Franchise Agreement and Post-Termination Activity**

47.      On September 9, 2016, Cicis sent Mr. Word and Ton of Pizza a Notice of
Termination which immediately terminated the Franchise Agreement for Cicis Store No.
194.  The termination was the result of, among other things, ongoing and uncured breaches of
the Franchise Agreement, failure to cure payment defaults related to the operation of Store
No. 202,  and the breaches of the Confidentiality and Noncompetition Covenants in the
Franchise Agreement that resulted from Mr. Word's involvement in the operation of 321
Pizza.   The Notice of Termination contained a demand to immediately cease & desist
operation of Cicis Store No. 194.      A copy of the Notice of Termination is attached hereto
as Exhibit C.

48.      On September 14, 2016, Bryan Jones, Cicis Senior Franchise Business
Consultant, visited the location of former Cicis Store No. 194, which is now operating as an
unauthorized Cicis restaurant.  *See* Declaration of Bryan Jones at ¶ 17, attached hereto as
Exhibit D.  Attached as Exhibit 4 to Mr. Jones' Declaration are true and correct copies of
photographs depicting the appearance, on September 14, 2016, of former Cicis Store No.
194.  *See* Exhibit 4 to Exhibit D.

49.      As of September 14, 2016, Mr. Word and Ton of Pizza continued to operate
former Cicis Store No. 194 as a Cicis restaurant, with a pizza, pasta, salad and dessert buffet
using the exact same configuration, fixtures, furniture, furnishings, menu items, product
layout, and pricing as used in the Cicis System and as used at the former Cicis Store No. 194.

Additionally, the physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area are identical to the physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area of former Cicis Store No. 194.  Cicis proprietary recipes are posted on the kitchen wall and are still being used.  The interior design is indistinguishable from those used in Cicis System and what was used at former Cicis Store No. 194.  The exterior signage is the exact same signage that was used for former Cicis Store No. 194 with the same distinctive font and color used extensively for many years by Cicis in its signage.  The restaurant continues to use the same phone number (386-774-2424) as former Cicis Store No. 194.  The former Cicis Store No. 194 is being operated in an indistinguishable manner—using the same signage, menu items, recipes, pricing, trade dress, phone number, system and methods, etc.—as when this restaurant was a valid Cicis Pizza restaurant franchise.  *See* Exhibit D at ¶ 19.

50.     On September 19, 2016, Mr. Jones again visited the location of former Cicis Store No. 194, which is still operating as an unauthorized Cicis restaurant.  As of that date, they were no longer using Cicis' high quality, proprietary ingredients but are instead using unapproved, inferior products to make their food.  The result of these changes is an inferior product that is being made using Cicis' recipes, which is being passed off as a Cicis product. See Declaration of Bryan Jones at ¶ 20, attached hereto as Exhibit D.  Attached as Exhibit 7 to Mr. Jones' Declaration are true and correct copies of photographs depicting the inferior, unapproved ingredients being used to make pizza at former Store No. 194.  See Exhibit 7 to Exhibit D.

51.     Mr. Word and Ton of Pizza continue to employ the same employees who

worked for Cicis Store No. 194. *See* Exhibit D at ¶ 20.

52. On September 19, 2016, a Cicis customer called Cicis' corporate offices to complain about the service she was receiving at former Cicis Store No. 194, which she understood to be an authorized Cicis restaurant. She was very upset that she could not get menu items that she was able to order in the past, disturbed by the change in branding, and stated she would never be eating in another Cicis again. A true and correct transcript of the customer's voicemail is attached hereto as Exhibit E.

53. On September 25, 2016, Mr. Jones again visited the location of former Cicis Store No. 194. Other than having removed some pictures on the wall and signs on the front door, it continues to operate as an unauthorized Cicis restaurant with a pizza, pasta, salad and dessert buffet using the exact same configuration, fixtures, furniture, furnishings, menu items, product layout, and pricing as used in the Cicis System and as used at the former Cicis Store No. 194. Additionally, the physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area are identical to the physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area of former Cicis Store No. 194. Cicis proprietary recipes are posted on the kitchen wall and are still being used. The interior design is indistinguishable from those used in Cicis System and what was used at former Cicis Store No. 194. The exterior signage is the exact same signage that was used for former Cicis Store No. 194 with the same distinctive font and color used extensively for many years by Cicis in its signage. The restaurant continues to use the same phone number (386-774-2424) as former Cicis Store No. 194. The former Cicis Store No. 194 is being operated in a virtually indistinguishable manner—using the same menu items,

22

recipes, pricing, trade dress, phone number, exterior signage, system and methods, etc.—as when this restaurant was a valid Cicis Pizza restaurant franchise. *See* Exhibit D at ¶ 23.

### C.      Summary of Mr. Word's and Ton of Pizza's Breaches

54.      Mr. Word's and Ton of Pizza's continued operation of former Cicis Store No. 194 in the manner described above violates Cicis rights under the Lanham Act and other laws.

55.      Furthermore, Mr. Word's and Ton of Pizza's continued operation of the pizza buffet restaurant at the same site as the former Cicis Store No. 194, using the same employees and using the Confidential Information they obtained while they were Cicis franchisees violates the Confidentiality and Noncompetition Covenants contained in the Franchise Agreement.

56.      In addition, the Franchise Agreement required Mr. Word and Ton of Pizza to pay to Cicis certain marketing and royalty fees.  Mr. Word and Ton of Pizza have defaulted on their monetary obligations to Cicis and owe Cicis $985.71 for unpaid marketing fees that were due under the Franchise Agreement.  Mr. Word is individually and personally liable for these amounts pursuant to the Guaranty.

57.      Finally, because the Franchise Agreement was terminated as a result of Mr. Word's and Ton of Pizza's defaults, Cicis is entitled to liquidated damages from them in the amount of $7,414.00 pursuant to the Franchise Agreement for the loss of its income stream derived from the market served by the former Cicis Store No. 194.  *See* Exhibit A at § XVIII.N.  For the 52 week period prior to the franchise termination, Cicis Store No. 194's average weekly sales were $16,848.00.

## III.   MR. WORD, MR. JOHNSON, FOUR WORD MOTION, LLC, AND CICIS STORE 202

### A.   Background

58.   On or about December 20, 2006, Cicis entered into a Franchise Agreement with Four Word Motion, LLC ("FWM"), for Cicis Pizza restaurant No. 202 located at 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida ("Cicis Store No. 202").   A copy of the Franchise Agreement is attached hereto as Exhibit F.

59.   Mr. Word is the principal of FWM.

60.   In connection with FWM's execution of the Franchise Agreement, Mr. Word executed a Guaranty in which he agreed to be designated as the "Controlling Principal" of FWM and thereby be bound by all obligations of the "Controlling Principals" as set forth in the Franchise Agreement.   A copy of the Guaranty is attached hereto as Exhibit G.

61.   In the Guaranty, Mr. Word agreed to be bound by all of FWM's obligations under the Franchise Agreement.

62.   Mr. Word is the principal of FWM.

63.   In connection with FWM's execution of the Franchise Agreement, Mr. Johnson executed a Guaranty in which he agreed to be designated as the "Controlling Principal" of FWM and thereby be bound by all obligations of the "Controlling Principals" as set forth in the Franchise Agreement.   *See* Exhibit F.

64.   In the Guaranty, Mr. Johnson agreed to be bound by all of FWM's obligations under the Franchise Agreement.

65.   In the Guaranty, Mr. Johnson agreed to be designated as the Operating Principal of FWM and thereby agreed to be bound by all of the obligations of the "Operating

Principal" as set forth in the Franchise Agreement.

66.     The Franchise Agreement contains a Confidentiality Covenant which, among other things, prohibits Mr. Word, Mr. Johnson, and FWM from disclosing or using for their own benefit any of Cicis Confidential Information, including trade secrets, and  knowledge or know-how concerning the methods of conducting, establishing and operating a Cicis Pizza restaurant, following the termination of the Franchise Agreement.  *See* Exhibit E at § X.B (the "Confidentiality Covenant").

67.     The Franchise Agreement also contains a Noncompetition Covenant which, *inter alia*, prohibits Mr. Word, Mr. Johnson, and FWM from owning or operating a Cicis-like pizza buffet restaurant within a twenty mile radius of the former Cicis Store No. 202 for a period of two years following the termination of the Franchise Agreement.  *See* Exhibit E at § X.C.2 (the "Noncompetition Covenant").

**B.     Termination of the Franchise Agreement and Post-Termination Activity**

68.     On March 24, 2016, Cicis notified FWM that it was not going to renew the Franchise Agreement for Store No. 202 when it expires on December 30, 2016 due to the failure to substantially comply with the Franchise Agreement during its term.  A copy of the Non-Renewal Notice is attached hereto as Exhibit H.  True and correct copies of photographs taken of Store No. 202 when it was operating as an authorized Cicis restaurant are attached as Exhibit 1 to the Declaration of Bryan Jones.  *See* Exhibit 1 to Exhibit D.

69.     On August 25, 2016, Mr. Word spoke with Cicis Senior Franchise Business Consultant, Bryan Jones, and told him that Store No. 202 had been closed by the State of Florida due to unpaid taxes owed to the Florida Department of Revenue.  *See* Exhibit D at ¶

5.

70.     Previously, on August 4, 2016, Mr. Milton filed paperwork with the Florida Department of Corporations and created 321 Pizza Company, LLC ("321 Pizza Company"), with its principal place of business being the address of Cicis Store No. 202.  A copy of the filing is attached hereto as Exhibit H.

71.     On August 26, 2016, Mr. Jones visited the location of Store No. 202.  The store was closed and had a sign saying it was closed for remodeling and would re-open that day.  *See* Exhibit D at ¶ 6.

72.     On August 27, 2016, Mr. Jones called the restaurant using the phone number for Cicis Store No. 202 and was told that 321 Pizza was open for business.  Someone answered the phone by saying "Hello, it's a great day at 321 Pizza."  The greeting, "Hello, it's a great day at Cicis Pizza." is used by all authorized Cicis restaurants and is part of Cicis proprietary System to be used by franchisees in operating a Cicis restaurant.  *See* Exhibit D at ¶ 7.

73.     On August 29, 2016, Mr. Jones again visited Store No. 202 and saw that Milton had re-opened Store 202 and changed the name to 321 Pizza, which is a knock-off, Cicis Pizza-like restaurant at the exact same location, using Cicis Trade Dress and confidential information, in violation of federal trademark law, Florida law and the Confidentiality and Noncompetition Covenants of the Franchise Agreement.  True and correct copies of photographs Mr. Jones took at that time are attached as Exhibit 2 to his Declaration.  *See* Exhibit 2 to Exhibit D.  The pylon sign along the street in front of the shopping center in which Store No. 202 was located still had a sign saying there was a Cicis

Pizza operating in the center.  *See id.*; Exhibit D at ¶ 8.

74.    On August 30, 2016, Cicis sent FWM a Notice of Termination, which immediately terminated the Franchise Agreement for Cicis Store No. 202.  The termination was the result of, among other things, ongoing and uncured breaches of the Franchise Agreement resulting from failure to comply with the Franchise Agreement and the breaches of the Confidentiality and Noncompetition covenants in the Franchise Agreement that resulted from Milton Word's operation of 321 Pizza.  The Notice of Termination contained a demand to immediately cease & desist operation of 321 Pizza.  A copy of the Notice of Termination is attached hereto as Exhibit J.

75.    On September 14, 2016, Mr. Jones again visited the location of former Cicis Store No. 202.  *See* Exhibit D at ¶ 10.  Attached as Exhibit 3 to Mr. Jones Declaration are true and correct copies of photographs depicting the appearance, on September 14, 2016, of former Cicis Store No. 202.  *See* Exhibit 3 to Exhibit D.

76.    Despite the Cease & Desist Demand, 321 Pizza is continuing to operate as a pizza buffet restaurant using many of Cicis recipes for pizza and dessert.  321 Pizza is advertising and charging the same price for the pizza buffet that had been charged when it was operating as a Cicis restaurant.  However, 321 Pizza is not using Cicis' high quality, proprietary ingredients but are instead using unapproved, inferior products to make their food.  Additionally they are using only about half the amount of toppings that Cicis puts on a pizza.  The result of these changes is an inferior product.  *See* Exhibit D at ¶ 11.

77.    321 Pizza is being operated in the same manner as it had been when it was an authorized Cicis restaurant, with a pizza, pasta, salad and dessert buffet using the exact same

configuration, fixtures, furniture, furnishings, menu items, product layout, and pricing as used in the Cicis System and as used at the former Cicis Store No. 202.  Additionally, the physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area are identical to the physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area of former Cicis Store No. 202.  With the exception of a different color of paint applied to the walls, the interior design is indistinguishable from those used in the Cicis System and what was used at former Cicis Store No. 202.  The exterior signage, which has been changed to read 321 Pizza, utilizes the same distinctive fonts and colors used extensively for many years by Cicis in its signage. The restaurant continues to use the same phone number (321-253-1299) as former Cicis Store No. 202.  321 Pizza is being operated in a virtually indistinguishable manner—using the same menu items, recipes, pricing, trade dress, phone number, system and methods, signage color and font, etc.—as when this restaurant was an authorized Cicis Pizza restaurant franchise.  *See* Exhibit D at ¶ 12.

78.     The employees from former Store No. 202 now work at 321 Pizza.  During Mr. Jones' September 14, 2016 visit, employees confirmed that the same manager from former Store No. 202, Mr. Colon, is now managing 321 Pizza, and that the franchisee for former Store No, 202, Mr. Word, is also involved in the operation of 321 Pizza.  *See* Exhibit D at ¶ 13.

79.     The lease for 321 Pizza's restaurant space, located at 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida 32935, is held in the name of FWM.  The lease was assigned to FWM by Mr. Word on August 16, 2006 and, under the terms of that assignment, Mr.

Word remains liable for all lease obligations until the lease expires on December 26, 2016. A copy of the lease documents are attached as Exhibit J.

80.     While operating Cicis Store No. 202, Mr. Word, Mr. Johnson, and Mr. Colon received Cicis confidential information regarding Cicis System and how to operate Cicis Pizza restaurants.

**C.     Summary of Mr. Word's, FWM's and 321 Pizza Company's Breaches**

81.     When an internet search is performed for "Cicis Pizza near Melbourne, Florida," every single site on the first two pages of the search results show that there is still a Cicis Pizza operating at 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida 32935.  When the general public performs such an internet search – whether it be from their home or while in their car while looking for a place to eat - and then travels to this location looking for a Cicis Pizza, they will find a nearly identical pizza restaurant which is likely to be confused with a Cicis restaurant.  *See* Exhibit D at ¶ 15.

82.     Mr. Word's, FWM's and 321 Pizza Company's continued operation of former Cicis Store No. 202 in the manner described above violates Cicis rights under the Lanham Act and other laws.

83.     Furthermore, Mr. Word's, FWM's and 321 Pizza Company's continued operation of the pizza buffet restaurant at the same site as the former Cicis Store No. 202 and using the Confidential Information they obtained while Mr. Word was a Cicis franchisee violates the Confidentiality and Noncompetition Covenants contained in the Franchise Agreement.

84.     In addition, the Franchise Agreement required Mr. Word, Mr. Johnson, and

FWM to pay to Cicis certain marketing and royalty fees.  Mr. Word, Mr. Johnson, and FWM have defaulted on their monetary obligations to Cicis and owe Cicis $661.91 for unpaid marketing and royalty fees that were due under the Franchise Agreement.  Mr. Word and Mr. Johnson are individually and personally liable for these amounts pursuant to the Guaranty.

85.     Finally, because the Franchise Agreement was terminated as a result of Defendants' defaults, Cicis is entitled to liquidated damages from Mr. Word, Mr. Johnson, and FWM in the amount of $9,756.00 pursuant to the Franchise Agreement for the loss of its income stream derived from the market served by the former Cicis Store No. 202.  *See* Exhibit E at § XVIII.N.

## IV.     Mr. COLON AND C-LOS PIZZA COMPANY

86.     Mr. Colon  is the former manager of Cicis Store No. 202.  *See* Exhibit D at ¶ 13.

87.     Through his employment as a Cicis store manager, Mr. Colon received Cicis Confidential Information.

88.     On August 15, 2016, Mr. Colon filed paperwork with the Florida Department of Corporations and created C-Los Pizza Co. ("C-Los").  A copy of that filing is attached as Exhibit L.

89.     On August 19, 2016, Mr. Colon filed paperwork with the Florida Department of Corporations applying for registration of the fictitious name 321 Pizza.  A copy of that filing is attached as Exhibit M.

90.     Mr. Colon and C-Los are wrongfully utilizing Cicis Confidential Information in his involvement with the operation of 321 Pizza.

91.     Mr. Colon's and C-Los' use of Cicis Trade Dress and Cicis trade secrets and confidential information in the operation of 321 Pizza as a knock-off, Cicis Pizza-like restaurant at the exact same location is in violation of federal trademark law and Florida law

**COUNT ONE:**
**FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**(Cicis Store No. 202 - Against Mr. Word, Mr., Johnson, FWM, 321 Pizza Company,**
**Mr. Colon and C-Los)**

92.     Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

93.     Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Mr. Colon and C-Los knowingly, willfully and maliciously continue to operate a restaurant from the same location and facility as the former Cicis Store No. 202.

94.     When previously operated as Cicis Store No. 202, the restaurant was configured in accordance with Cicis Marks, Cicis Trade Dress and Cicis System including, *inter alia*, the exterior signage, the interior décor, color scheme, furnishings, and physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines and dining area.

95.     The restaurant is being operated by the Defendants knowingly, willfully and maliciously using the same pizza buffet System used by Cicis with the Trade Dress virtually unchanged.

96.     Cicis Trade Dress and the goodwill associated with and symbolized by the Trade Dress have suffered damage and will continue to suffer damage if Defendants do not immediately cease and desist from infringing on Cicis Trade Dress.

97.     Cicis Trade Dress – both in its individual components and in its integration of components – is inherently distinctive, has acquired secondary meaning, and is protectable

under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

98.     Defendants' continued knowing, willful, and malicious unauthorized use of Cicis System and Cicis Trade Dress is likely to deceive or cause confusion or mistake regarding the source or origin of their goods and services, and as to the sponsorship, endorsement or affiliation between Cicis and Defendants.

99.     Defendants' acts falsely represent their products and services as being legitimately connected with Cicis and are knowingly, willfully, and maliciously intended by them to do so.

100.    Defendants' acts constitute knowing, willful and malicious federal trademark and service mark infringements under §32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

101.    Defendants' acts also constitute knowing, intentional, willful and malicious infringement of Cicis protectable Trade Dress under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT TWO:
## FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)

102.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

103.    Mr. Word and Ton of Pizza knowingly, willfully and maliciously continue to operate a restaurant from the same location and facility as the former Cicis Store No. 194.

104.    When previously authorized to operate as Cicis Store No. 194, the restaurant was configured in accordance with Cicis Marks, Cicis Trade Dress and Cicis System including, *inter alia*, the exterior signage, the interior décor, color scheme, furnishings, and physical arrangement of the kitchen, kitchen appliances, tray wells, cash register, buffet lines

and dining area.

105.    Mr. Word's and Ton of Pizza's restaurant is being operated by Mr. Word and Ton of Pizza knowingly, willfully and maliciously using the same pizza buffet system used by Cicis with all of Cicis Marks and Trade Dress unchanged.

106.    Cicis Marks and the goodwill associated with and symbolized by Cicis Marks have suffered damage and will continue to suffer damage if Mr. Word and Ton of Pizza do not immediately cease and desist from infringing on Cicis Marks and Trade Dress.

107.    Cicis Trade Dress – both in its individual components and in its integration of components – is inherently distinctive, has acquired secondary meaning, and is protectable under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

108.    Mr. Word's and Ton of Pizza's continued knowing, willful and malicious unauthorized use of Cicis Marks, Cicis System, and Cicis Trade Dress is likely to deceive or cause confusion or mistake regarding the source or origin of their goods and services, and as to the sponsorship, endorsement or affiliation between Cicis and Defendants Mr. Word and Ton of Pizza.

109.    Mr. Word's and Ton of Pizza's acts falsely represent their products and services as being legitimately connected with Cicis and are knowingly, willfully and maliciously intended by Mr. Word and Ton of Pizza to do so.

110.    Mr. Word's and Ton of Pizza's acts constitute knowing, willful and malicious federal trademark and service mark infringements under §32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

111.    Mr. Word's and Ton of Pizza's acts also constitute knowing, intentional,

willful and malicious infringement of Cicis protectable trade dress under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT THREE:
## FEDERAL TRADEMARK DILUTION
### (Cicis Store No. 202 - Against Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Mr. Colon and C-Los)

112.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

113.    Cicis System and Cicis Marks have become distinctive of its goods and services and have become famous marks and business systems by virtue of longstanding use, extensive advertising and publicity, widespread recognition by consumers and those in the trade, and have been exclusively used in connection with Cicis goods and services.

114.    Mr. Word's, Mr. Johnson's, FWM's, 321 Pizza Company's, Mr. Colon's and C-Los' knowing, willful and malicious unauthorized use of Cicis System and Cicis Marks causes dilution of their distinctive quality.

115.    Defendants' conduct constitutes knowing, willful and malicious trademark dilution in violation of Section §43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

116.    Defendants' actions are knowing, willful and malicious, done intentionally for the purpose of trading on Cicis reputation causing dilution of Cicis System.

117.    As a result of Defendants' actions, Cicis has suffered irreparable damages and will continue to do so if Defendants do not immediately cease and desist from diluting Cicis System and Cicis Marks.

## COUNT FOUR:
## FEDERAL TRADEMARK DILUTION
### (Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)

118.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

119.     Cicis Marks and Cicis System have become distinctive of its goods and services and have become famous marks and business systems by virtue of longstanding use, extensive advertising and publicity, widespread recognition by consumers and those in the trade, and have been exclusively used in connection with Cicis goods and services.

120.     Mr. Word's and Ton of Pizza's knowing, willful and malicious unauthorized use of Cicis Marks and Cicis System causes dilution of their distinctive quality.

121.     Mr. Word's and Ton of Pizza's conduct constitutes knowing, willful and malicious trademark dilution in violation of Section §43(c) of the Lanham Act, 15 U.S.C. §1125(c).

122.     Mr. Word's and Ton of Pizza's actions are knowing, willful and malicious, done intentionally for the purpose of trading on Cicis reputation causing dilution of Cicis Marks and Cicis System.

123.     As a result of Mr. Word's and Ton of Pizza's actions, Cicis has suffered irreparable damages and will continue to do so if Mr. Word and Ton of Pizza do not immediately cease and desist from diluting Cicis Marks and Cicis System.

## COUNT FIVE:
## FLORIDA MISAPPROPRIATION OF TRADE SECRETS
### (Cicis Store No. 202 - Against Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Mr. Colon and C-Los)

124.     Cicis realleges paragraphs 1 through 91 as if set forth fully herein.

125.     Cicis System, confidential information, and specialized proprietary training regarding the operation of a pizza buffet restaurant in accordance with the Cicis System constitute trade secrets, providing Cicis with a competitive advantage over competitors who do not know such information.

126.    Cicis trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

127.    Cicis trade secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

128.    Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Mr. Colon and C-Los owe a common law duty to Cicis not to divulge trade secrets, whether or not the use or disclosure of such trade secrets are prohibited or restricted by an express contract.

129.    321 Pizza is a direct competitor of Cicis.

130.    Defendants are knowingly, willfully and maliciously using Cicis trade secrets in the operation of their restaurant in violation of section 688.002(2) of the Florida Statutes.

131.    As a result of Defendants' actions, Cicis has suffered irreparable damages and will continue to do so if Defendants do not immediately cease and desist from misappropriating Cicis trade secrets.

132.    All conditions precedent to suit under the Florida Uniform Trade Secrets Act have been satisfied.

### COUNT SIX:
### FLORIDA MISAPPROPRIATION OF TRADE SECRETS
#### (Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)

133.    Cicis realleges paragraphs 1 through 91 as if set forth fully herein.

134.    Cicis System, confidential information, and specialized proprietary training regarding the operation of a pizza buffet restaurant in accordance with the Cicis System constitute trade secrets, providing Cicis with a competitive advantage over competitors who

do not know such information.

135.     Cicis trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

136.     Cicis trade secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

137.     Mr. Word and Ton of Pizza owe a common law duty to Cicis not to divulge trade secrets, whether or not the use or disclosure of such trade secrets are prohibited or restricted by an express contract.

138.     The restaurant currently being operated by Mr. Word and Ton of Pizza is a direct competitor of Cicis.

139.     Mr. Word and Ton of Pizza are knowingly, willfully and maliciously using Cicis trade secrets in the operation of their restaurant in violation of section 688.002(2) of the Florida Statutes.

140.     As a result of Mr. Word's and Ton of Pizza's actions, Cicis has suffered irreparable damages and will continue to do so if Mr. Word and Ton of Pizza do not immediately cease and desist from misappropriating Cicis trade secrets.

141.     All conditions precedent to suit under the Florida Uniform Trade Secrets Act have been satisfied.

## COUNT SEVEN:
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Cicis Stores No. 194 and 202 - Against All Defendants)

142.     Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

143.     Defendants' acts, described above, include unfair and deceptive acts and practices under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.,* including:

    a.      Passing off goods or services as those of another;

    b.      Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    c.      Causing actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another;

    d.      Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; and

    e.      Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are actually of a different standard, quality, grade, style or model.

144.     Defendants' aforementioned practices of selling their products and services as those of Cicis and/or in association with Cicis through false labeling and misrepresentations to the public, cause the public to believe that Defendants' products and services emanate from, or are associated with, Cicis.

145.     Defendants' actions affect the public interest by deceiving and misleading the public into believing that Defendants' restaurants are in some way sponsored, affiliated or associated with Cicis, when they are not.

146.    Additionally, Defendants' actions are capable of repetition and have been repeated through numerous sales to consumers.

147.    Defendants' actions are and were willful and wanton and Defendants knew or should have known that their conduct was unfair and deceptive and in violation of the Florida Deceptive and Unfair Trade Practices Act.

148.    Cicis has suffered irreparable harm and damages as a result of the acts of Defendants in an amount thus far not determined.

149.    All conditions precedent to suit under the Florida Deceptive Trade Practices Act have been satisfied.

## COUNT NINE:
## FLORIDA STATUTORY TRADEMARK INFRINGEMENT AND DILUTION
### (Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)

150.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

151.    This claim arises under Chapter 495 of the Florida Statutes and the common law of the state.

152.    Mr. Word's and Ton of Pizza's acts have caused a likelihood of injury to Cicis goodwill and business reputation, impaired the effectiveness of the Cicis State Registrations, and diluted Cicis Trade Dress.

153.    Mr. Word's and Ton of Pizza's acts have violated the trademark laws of the State of Florida and specifically sections 495.131 and 495.151 of the Florida Statutes.

154.    Cicis has no adequate remedy at law.  Mr. Word's and Ton of Pizza's conduct have caused and, if not enjoined, will continue to cause, irreparable damage to the rights of Cicis in its State Registrations and Trade Dress, and to Cicis business, reputation, and

goodwill, and Cicis is entitled to all remedies available under section 495.141 of the Florida Statutes.

155.     Therefore, Mr. Word and Ton of Pizza are liable to Cicis for all remedies available under section 495.141 of the Florida Statutes, including injunctive relief, seizure of all offending goods, and treble damages as compensatory damages under the statute.

**COUNT TEN:**
**FLORIDA COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**(Cicis Store No. 202 - Against Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Mr. Colon and C-Los)**

156.     Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

157.     This is a claim against Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Mr. Colon and C-Los for trademark infringement and unfair competition under the laws of the State of Florida.

158.     Cicis has built up valuable goodwill in its Cicis Marks and products and services.

159.     Defendants' use of Cicis Marks and services is likely to and does permit Defendants  to palm off their restaurant and its goods and services as those of Cicis, all to the detriment of Cicis and the unjust enrichment of Defendants.

160.     Defendants, with full knowledge of the notoriety of Cicis products and services, intended to and did trade on the goodwill associated with Cicis Marks, products and services and have misled and will continue to mislead the public into assuming a connection between Cicis products and services and Defendants' goods and services by Defendants' advertisement, promotion, distribution, sales and offers for sale of goods and services falsely

representing Cicis products and services.

161.    Defendants' unauthorized use of Cicis Marks and Cicis products and services has caused and is likely to continue to cause damage to Cicis by tarnishing the valuable reputation and image associated with Cicis Marks and its corresponding goods and services. Defendants have palmed off their goods and services as those of Cicis by Defendants' labeling and misrepresentations to the public, members of which are likely to believe that 321 Pizza and its goods and services emanate from, or are associated with, Cicis.

162.    Defendants' acts have caused confusion and deceived the public as to the source of Defendants' goods and services and are likely to continue to do so in the future. Defendants' goods and services falsely suggest a connection with Cicis.

163.    Defendants' conduct constitutes trademark infringement and unfair competition in violation of Florida common law.

164.    Defendants' actions have been willful and malicious.

165.    Therefore, Defendants are liable to Cicis for compensatory damages and/or Defendants' profits.

## COUNT ELEVEN:
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)

166.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

167.    This is a claim against Mr. Word and Ton of Pizza for trademark infringement and unfair competition under the laws of the State of Florida.

168.    Cicis has built up valuable goodwill in Cicis Marks and its corresponding goods and services.

169.    Mr. Word's and Ton of Pizza's use of Cicis Marks and related goods and services is likely to and does permit Mr. Word and Ton of Pizza to palm off their restaurant and its goods and services as those of Cicis, all to the detriment of Cicis and the unjust enrichment of Mr. Word and Ton of Pizza.

170.    Mr. Word and Ton of Pizza, with full knowledge of the notoriety of Cicis Marks and goods and services, intended to and did trade on the goodwill associated with Cicis Marks and goods and services and have misled and will continue to mislead the public into assuming a connection between Cicis Marks and goods and services and Mr. Word's and Ton of Pizza's goods and services by Mr. Word's and Ton of Pizza's advertisement, promotion, distribution, sales and offers for sale of goods and services falsely representing Cicis Marks and goods and services.

171.    Mr. Word's and Ton of Pizza's unauthorized use of Cicis Marks and goods and services has caused and is likely to continue to cause damage to Cicis by tarnishing the valuable reputation and image associated with Cicis Marks and its goods and services.  Mr. Word and Ton of Pizza have palmed off their goods and services as those of Cicis by Mr. Word's and Ton of Pizza's labeling and misrepresentations to the public, members of which are likely to believe that Word's and Ton of Pizza's restaurant and its goods and services emanate from, or are associated with, Cicis.

172.    Mr. Word's and Ton of Pizza's acts have caused confusion and deceived the public as to the source of Mr. Word's and Ton of Pizza's goods and services and are likely to continue to do so in the future.  Mr. Word's and Ton of Pizza's goods and services falsely suggest a connection with Cicis.

173.    Mr. Word's and Ton of Pizza's conduct constitutes trademark infringement and unfair competition in violation of Florida law.

174.    Mr. Word's and Ton of Pizza's actions have been willful and malicious.

175.    By reason of the foregoing, Mr. Word and Ton of Pizza are liable to Cicis for compensatory damages and/or Mr. Word's and Ton of Pizza's profits.

**COUNT TWELVE:**
**BREACH OF CONTRACT – VIOLATION OF CONFIDENTIALITY AND NONCOMPETITION COVENANTS**
**(Cicis Store 202 - Against Mr. Word, Mr. Johnson and FWM)**

176.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

177.    The Franchise Agreement and the Guaranty are enforceable contracts between Cicis and Mr. Word.

178.    The Franchise Agreement contains a Confidentiality Covenant which provides as follows:

> Neither Franchisee nor any Controlling Principal shall, during the term of this Agreement and thereafter, communicate, divulge or use for the benefit of any other person, persons, partnership, limited liability company, association or corporation and, following the expiration or termination of this Agreement, or the transfer of their interest in this Agreement, they shall not use for their own benefit, any confidential or proprietary information, trade secrets, knowledge or know-how concerning the methods of conducting the business contemplated by this Agreement, including without limitation the methods of establishing and operating a Cicis Pizza restaurant and other information contained in the Manuals or otherwise disclosed or communicated to them or of which they may be apprised under the terms of this Agreement ("Confidential Information"). Any and all information, knowledge, know-how, techniques, and any materials used in or related to the System which Franchisor provides to Franchisee in connection with this Agreement shall be deemed Confidential Information for purposes of this Agreement. … The covenant in this Section shall survive the expiration, termination or transfer of this Agreement or any interest herein and shall be perpetually binding upon Franchisee and each of the Controlling Principals.

Exhibit E at § X.B.

179.    The Confidentiality Covenant of the Franchise Agreement is enforceable against FWM as the Franchisee and is enforceable against Mr. Word Mr. Johnson as the Controlling Principals by virtue of the Guaranty.

180.    Defendants' continued operation of the restaurant located at the former site of Cicis Store No. 202 constitutes a breach of the Confidentiality Covenant in that Defendants are willfully and maliciously using Cicis confidential information, trade secrets, knowledge and know-how, techniques and materials used concerning the methods and manner of conducting the business of operating a pizza buffet as a Cicis Pizza restaurant to operate a competing pizza buffet restaurant.

181.    The Franchise Agreement contains a Noncompetition Covenant which provides as follows:

> With respect to Franchisee and for a continuous uninterrupted period commencing upon the expiration, termination, or transfer of all the Franchisee's interest in this Agreement (or, with respect to each of the Controlling Principals, commencing upon the earlier of: (i) the expiration, termination, or transfer of all of Franchisee's interest in this Agreement or (ii) the time such individual or entity ceases to be a Controlling Principal) and continuing for two (2) years thereafter, except as otherwise approved in writing by Franchisor, neither Franchisee, nor any of the Controlling Principals shall, directly or indirectly, for themselves, or through, on behalf of or in conjunction with any person, persons, partnership, limited liability company, corporation or other entity or association:
>   (a)  Divert, or attempt to divert, any business or customer of the Restaurant to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.
>   (b)  Employ, or seek to employ, any person who is at that time or was within the preceding sixty (60) days employed by Franchisor or by any other developer or franchisee of Franchisor, or otherwise directly or indirectly induce such person to leave that person's employment.
>   (c)  Except with respect to facilities operated under valid Franchise

Agreements with Franchisor, own, maintain, operate, engage in, be employed by or have any financial or beneficial interest in (including any interest in limited liability companies, corporations, partnerships, trusts, unincorporated associations or joint ventures), advise, assist, aid, make loans to, or otherwise support any business that (i) is of a character and concept similar to Cicis brand food service facilities, including a business which offers as a primary menu item or mix of menu items pizza (including, but not limited to, fresh, frozen or unbaked pizza) and other Italian foods using the distribution methods (including dine-in, carry-out or catering) or (ii) functions as a commissary to sell or lease to or supply any such business and which is located, or is intended to be located:

> (1)   at the Approved Location [defined as 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida 32935];
>
> (2)   within the Protected Area [defined as a 1.5 mile radius around the intersection of 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida 32935]; or
>
> …
>
> (4) within a twenty (20) mile radius of (A) the Approved Location, (B) the Protected Area…or (D) any Cicis brand food service facility in existence or under construction as of the earlier of (x) the expiration or termination of, or the transfer of all the Franchisee's interest in, this Agreement; or (y) the time a Controlling Principal ceases to satisfy the definition of Controlling Principal, as applicable.

Exhibit E at § X.C.2 (the "Noncompetition Covenant").

182.    The Noncompetition Covenant is enforceable against FWM as the Franchisee and is enforceable against Mr. Word and Mr. Johnson as the Controlling Principals by virtue of the Guaranty.

183.    The Noncompetition Covenant is reasonable in time, geographic area and line of business and is no more restrictive than is necessary under the circumstances to protect Cicis legitimate business interests in its trade secrets and other valuable confidential business information.  The provision is also reasonable and no more restrictive than necessary under the circumstances to protect Cicis legitimate business interests in its customer goodwill associated with its trade name, trademarks, and trade dress.

184.    Defendants have violated and continue to violate the Noncompetition Covenant in the Franchise Agreement by continuing to operate a pizza buffet restaurant in the exact same location as the former Cicis Store No. 202 within two years of the termination of the Franchise Agreement.

185.    Additionally, Defendants have violated and continue to violate the Noncompetition Covenant in the Franchise Agreement by acting as lessee for 321 Pizza's restaurant operations and providing aid, assistance and support to the infringing restaurant by, among other things, paying 321 Pizza's rent and providing it retail space in which to operate a pizza buffet restaurant in the exact same location as the former Cicis Store No. 202 within two years of the termination of the Franchise Agreement.

186.    Additionally, Defendants have violated and continue to violate the Noncompetition Covenant in the Franchise Agreement by employing, or seeking to employ, persons who were within the preceding sixty (60) days employed by any authorized Cicis' franchisee.

187.    Finally, Defendants' very act of closing Cicis Store No. 202 in order to open a competing restaurant is a violation of the Noncompetition Covenant.

188.    Defendants have violated and continue to violate the Noncompetition Covenant provision in the Franchise Agreement willfully and maliciously, knowing that such conduct is wrongful.

### COUNT THIRTEEN:
### BREACH OF CONTRACT – VIOLATION OF CONFIDENTIALITY AND NONCOMPETITION COVENANTS
### (Cicis Store 194 - Against Mr. Word and Ton of Pizza)

189.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

190.    The Franchise Agreement and the Guaranty are enforceable contracts between Cicis and Word and Ton of Pizza.

191.    The Franchise Agreement contains a Confidentiality Covenant which provides as follows:

> Neither Franchisee nor any Controlling Principal shall, during the term of this Agreement and thereafter, communicate, divulge or use for the benefit of any other person, persons, partnership, limited liability company, association or corporation and, following the expiration or termination of this Agreement, or the transfer of their interest in this Agreement, they shall not use for their own benefit, any confidential or proprietary information, trade secrets, knowledge or know-how concerning the methods of conducting the business contemplated by this Agreement, including without limitation the methods of establishing and operating a Cicis Pizza restaurant and other information contained in the Manuals or otherwise disclosed or communicated to them or of which they may be apprised under the terms of this Agreement ("Confidential Information").  Any and all information, knowledge, know-how, techniques, and any materials used in or related to the System which Franchisor provides to Franchisee in connection with this Agreement shall be deemed Confidential Information for purposes of this Agreement. … The covenant in this Section shall survive the expiration, termination or transfer of this Agreement or any interest herein and shall be perpetually binding upon Franchisee and each of the Controlling Principals.

Exhibit A at §X.B.

192.    The Confidentiality Covenant of the Franchise Agreement is enforceable against Ton of Pizza as the Franchisee and is enforceable against Word as the Controlling Principal by virtue of the Guaranty.

193.    Mr. Word's and Ton of Pizza's continued operation of the restaurant located at the former site of Cicis Store No. 194 constitutes a breach of the Confidentiality Covenant in that Defendants are willfully and maliciously using Cicis confidential information, trade secrets, knowledge and know-how, techniques and materials used concerning the methods and manner of conducting the business of operating a pizza buffet as a Cicis Pizza restaurant

to operate a competing pizza buffet restaurant.

194.    The Franchise Agreement contains a Noncompetition Covenant which

provides as follows:

> With respect to Franchisee and for a continuous uninterrupted period commencing upon the expiration, termination, or transfer of all the Franchisee's interest in this Agreement (or, with respect to each of the Controlling Principals, commencing upon the earlier of: (i) the expiration, termination, or transfer of all of Franchisee's interest in this Agreement or (ii) the time such individual or entity ceases to be a Controlling Principal) and continuing for two (2) years thereafter, except as otherwise approved in writing by Franchisor, neither Franchisee, nor any of the Controlling Principals shall, directly or indirectly, for themselves, or through, on behalf of or in conjunction with any person, persons, partnership, limited liability company, corporation or other entity or association:
>
> (a) Divert, or attempt to divert, any business or customer of the Restaurant to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.
>
> (b) Employ, or seek to employ, any person who is at that time or was within the preceding sixty (60) days employed by Franchisor or by any other developer or franchisee of Franchisor, or otherwise directly or indirectly induce such person to leave that person's employment.
>
> (c) Except with respect to facilities operated under valid Franchise Agreements with Franchisor, own, maintain, operate, engage in, be employed by or have any financial or beneficial interest in (including any interest in limited liability companies, corporations, partnerships, trusts, unincorporated associations or joint ventures), advise, assist, aid, make loans to, or otherwise support any business that (i) is of a character and concept similar to Cicis brand food service facilities, including a business which offers as a primary menu item or mix of menu items pizza (including, but not limited to, fresh, frozen or unbaked pizza) and other Italian foods using the distribution methods (including dine-in, carry-out or catering) or (ii) functions as a commissary to sell or lease to or supply any such business and which is located, or is intended to be located:
>
> (1)   at the Approved Location [defined as 2448 Volusia Ave., Orange City, Florida 32763];
>
> (2)   within the Protected Area [defined as a 1.5 mile radius around the intersection of 2448 Volusia Ave., Orange City, Florida 32763]; or
>
> …
>
> (4) within a twenty (20) mile radius of (A) the Approved Location, (B) the Protected Area…or (D) any Cicis brand food service facility in

existence or under construction as of the earlier of (x) the expiration or termination of, or the transfer of all the Franchisee's interest in, this Agreement; or (y) the time a Controlling Principal ceases to satisfy the definition of Controlling Principal, as applicable.

Exhibit A at § X.C.2 (the "Noncompetition Covenant").

195.    The Noncompetition Covenant is enforceable against Ton of Pizza as the Franchisee and is enforceable against Mr. Word as the Controlling Principal by virtue of the Guaranty.

196.    The Noncompetition Covenant is reasonable in time, geographic area and line of business and is no more restrictive than is necessary under the circumstances to protect Cicis legitimate business interests in its trade secrets and other valuable confidential business information.  The provision is also reasonable and no more restrictive than necessary under the circumstances to protect Cicis legitimate business interests in its customer goodwill associated with its trade name, trademarks, and trade dress.

197.    Mr. Word and Ton of Pizza have violated and continue to violate the Noncompetition Covenant in the Franchise Agreement by continuing to operate a pizza buffet restaurant in the exact same location as the former Cicis Store No. 194 within two years of the termination of the Franchise Agreement.

198.    Additionally, Defendants have violated and continue to violate the Noncompetition Covenant in the Franchise Agreement by employing, or seeking to employ, persons who were within the preceding sixty (60) days employed by any authorized Cicis' franchisee.

199.    Finally, Mr. Word's involvement in the lease and operation of 321 Pizza is a violation of the Noncompetition Covenant in Store 194's Franchise Agreement.

200.    Mr. Word and Ton of Pizza have violated and continue to violate the Noncompetition Covenant in the Franchise Agreement willfully and maliciously, knowing that such conduct is wrongful.

**COUNT FOURTEEN:**
**BREACH OF CONTRACT**
**(Cicis Store No. 202 - Against Mr. Word, Mr. Johnson and FWM)**

201.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

202.    The Franchise Agreement is an enforceable contract between Cicis and FWM.

203.    The Guaranty is an enforceable contract between Cicis and Mr. Word.

204.    The Guaranty is an enforceable contract between Cicis and Mr. Johnson.

205.    The Franchise Agreement provides that FWM must pay Cicis periodic royalty fees and marketing fees.  *See* Exhibit E at §§ IV.B, VIII.C.

206.    FWM has breached the Franchise Agreement by failing and refusing to pay Cicis royalty fees in the total amount of $661.91.

207.    The Franchise Agreement provides that FWM shall promptly pay all sums owing to Franchisor and its subsidiaries or affiliates.  *See* Exhibit E at § XVIII.E.

208.    FWM has breached the Franchise Agreement by failing and refusing to pay $16,621.46 for food and supplies purchased from Cicis affiliate, JMC Restaurant Distribution LP.

209.    Mr. Word and Mr. Johnson are each, jointly and severally, individually and personally liable for the amounts owed by FWM to Cicis by virtue of the Guaranty.

**COUNT FIFTEEN:**
**BREACH OF CONTRACT**
**(Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)**

210.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

211.    The Franchise Agreement is an enforceable contract between Cicis and Ton of Pizza.

212.    The Guaranty is an enforceable contract between Cicis and Mr. Word.

213.    The Franchise Agreement provides that Ton of Pizza must pay Cicis periodic royalty fees and marketing fees.  *See* Exhibit A at §§ IV.B, VIII.C.

214.    Ton of Pizza has breached the Franchise Agreement by failing and refusing to pay Cicis marketing fees in the total amount of $985.71.

215.    The Franchise Agreement provides that Ton of Pizza shall promptly pay all sums owing to Franchisor and its subsidiaries or affiliates.  *See* Exhibit A at § XVIII.E.

216.    Mr. Word is individually and personally liable for the amounts owed by Ton of Pizza to Cicis by virtue of the Guaranty.

**COUNT SIXTEEN:**
**LIQUIDATED DAMAGES FOR TERMINATION OF FRANCHISE AGREEMENT**
**(Cicis Store No. 202 - Against Mr. Word, Mr. Johnson and FWM)**

217.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

218.    The Franchise Agreement is an enforceable contract between Cicis and FWM.

219.    The Guaranty is an enforceable contract between Cicis and Mr. Word.

220.    The Guaranty is an enforceable contract between Cicis and Mr. Johnson.

221.    As previously set forth herein, Mr. Word, Mr. Johnson and FWM breached, and were in default under, the Franchise Agreement.

222.    As a result of Defendants' defaults, Cicis terminated the Franchise Agreement pursuant to Section XVII.A of the Franchise Agreement.

223.    Section XVIII.N of the Franchise Agreement provides for liquidated damages in the event of termination of the Franchise Agreement as the result of the franchisee's default as follows:

> If Franchisor terminates this Agreement for any reason or if Franchisee otherwise ceases to operate the Restaurant prior to the expiration of the term (excluding cases of Force Majeure), Franchisee shall pay Franchisor as liquidated damages for the loss of Franchisor's royalty stream under this Agreement a replacement royalty based on the weekly average of Franchisee's Gross Sales for the fifty two (52) weeks of sales preceding the cessation of operations ("Liquidated Damages"). Liquidated Damages are payable on a weekly basis and shall begin from the earlier of the termination date or the date that Franchisee ceased to operate the Restaurant, if different, and shall continue until the earlier of (i) the opening of a replacement Cicis Pizza restaurant in the market that was previously served by the Restaurant, by Franchisee or another Cicis developer or franchisee, (ii) the execution of a development agreement between Franchisor and Franchisee or another Cicis developer for the development of a Cicis Pizza restaurant in the market that was previously served by the Restaurant, or (iii) the Expiration Date. If Franchisee's Restaurant has not been operating for fifty-two (52) weeks, then the time period for calculating the amount of Liquidated Damages shall be the number of weeks that Franchisee operated the Restaurant. The parties acknowledge that a precise calculation of the full extent of the damages which Franchisor will incur in the event of termination of this Agreement or Franchisee's cessation of operations is difficult in the extreme, and agree that the payments provided under this Section XIII.N. is reasonable in light of the damages which Franchisor will incur in the event of termination or cessation of operations. Such Liquidated Damages payments shall be in addition to amounts provided above in Section XIII.E. The Liquidated Damages hereunder shall not affect Franchisor's rights to obtain appropriate equitable relief and remedies as provided in Section XIX, nor shall it affect Franchisor's right to pursue any other remedies

*See* Exhibit E at § XVIII.N.

224.    Because the Franchise Agreement was terminated as a result of Defendants' defaults under Section XVII.A of the Franchise Agreement, Cicis is entitled to an award of liquidated damages from FWM in the amount of $9,756.00 pursuant to Section XVIII.N of the Franchise Agreement.

225.    Mr. Word and Mr. Johnson are each, jointly and severally, individually and personally liable for the amount of Liquidated Damages owed to Cicis by FWM pursuant to the Guaranty.

## COUNT SEVENTEEN:
## LIQUIDATED DAMAGES FOR TERMINATION OF FRANCHISE AGREEMENT
### (Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)

226.    Cicis realleges paragraphs 1 through 91 as if fully set forth herein.

227.    The Franchise Agreement is an enforceable contract between Cicis and Ton of Pizza.

228.    The Guaranty is an enforceable contract between Cicis and Mr. Word.

229.    As previously set forth herein, Mr. Word and Ton of Pizza breached, and were in default under, the Franchise Agreement.

230.    As a result of Mr. Word's and Ton of Pizza's defaults, Cicis terminated the Franchise Agreement pursuant to Section XVII.A of the Franchise Agreement.

231.    Section XVIII.N of the Franchise Agreement provides for liquidated damages in the event of termination of the Franchise Agreement as the result of the franchisee's default as follows:

> If Franchisor terminates this Agreement for any reason or if Franchisee otherwise ceases to operate the Restaurant prior to the expiration of the term (excluding cases of Force Majeure), Franchisee shall pay Franchisor as liquidated damages for the loss of Franchisor's royalty stream under this Agreement a replacement royalty based on the weekly average of Franchisee's Gross Sales for the fifty two (52) weeks of sales preceding the cessation of operations ("Liquidated Damages"). Liquidated Damages are payable on a weekly basis and shall begin from the earlier of the termination date or the date that Franchisee ceased to operate the Restaurant, if different, and shall continue until the earlier of (i) the opening of a replacement Cicis Pizza restaurant in the market that was previously served by the Restaurant, by Franchisee or another Cicis developer or franchisee, (ii) the execution of a

> development agreement between Franchisor and Franchisee or another Cicis developer for the development of a Cicis Pizza restaurant in the market that was previously served by the Restaurant, or (iii) the Expiration Date. If Franchisee's Restaurant has not been operating for fifty-two (52) weeks, then the time period for calculating the amount of Liquidated Damages shall be the number of weeks that Franchisee operated the Restaurant. The parties acknowledge that a precise calculation of the full extent of the damages which Franchisor will incur in the event of termination of this Agreement or Franchisee's cessation of operations is difficult in the extreme, and agree that the payments provided under this Section XIII.N. is reasonable in light of the damages which Franchisor will incur in the event of termination or cessation of operations. Such Liquidated Damages payments shall be in addition to amounts provided above in Section XIII.E. The Liquidated Damages hereunder shall not affect Franchisor's rights to obtain appropriate equitable relief and remedies as provided in Section XIX, nor shall it affect Franchisor's right to pursue any other remedies

*See* Exhibit A § XVIII.N.

232.    Because the Franchise Agreement was terminated as a result of Word's and Ton of Pizza's defaults under Section XVII.A of the Franchise Agreement, Cicis is entitled to an award of liquidated damages from Ton of Pizza in the amount of $7,414.00 pursuant to Section XVIII.N of the Franchise Agreement.

233.    Mr. Word is individually and personally liable for the amount of Liquidated Damages owed to Cicis by Ton of Pizza pursuant to the Guaranty.

**COUNT EIGHTEEN:**
**INJUNCTIVE RELIEF**
**(Cicis Store No. 202 - Against Mr. Word, Mr. Johnson, FWM, 321 Pizza Company, Colon and C-Los)**

234.    Cicis realleges each of the foregoing paragraphs.

235.    The facts stated above demonstrate a substantial likelihood Cicis will prevail on the merits of its claims, particularly Cicis claims for trademark dilution, misappropriation of trade secrets, and breach of provisions of the Franchise Agreement.

236.    Cicis has no adequate remedy at law to remedy Mr. Word's, Mr. Johnson's, FWM's, 321 Pizza Company's, Mr. Colon's and C-Los' unlawful conduct.

237.    As a result of Defendants' actions, Cicis is suffering and will continue to suffer irreparable injury if Defendants are not restrained from continuing their unlawful conduct and the injury is immediate and imminent.

238.    Defendants' continued unlawful conduct – after notification by Cicis that such conduct was in violation of law and that failure to cease and desist would result in formal legal action – evinces a knowing, intentional, and malicious intent to continue their unlawful conduct.

239.    The threatened injury to Cicis Marks and Cicis System and the goodwill associated with them, and the threatened injury to Cicis from loss/misappropriation of trade secrets, outweighs any damage injunctive relief might cause Defendants – who have absolutely no right to operate their restaurant at the location and in the manner in which they are continuing to do so.

240.    Issuance of injunctive relief against Defendants will not disserve the public interest.    To the contrary, the public interest is served by protecting trade secrets. Furthermore, injunctive relief to protect Cicis trademarks and trade dress is specifically authorized by the Franchise Agreement and the Lanham Act.  *See* Exhibit E at § X.D.

**COUNT NINETEEN:**
**INJUNCTIVE RELIEF**
**(Cicis Store No. 194 - Against Mr. Word and Ton of Pizza)**

241.    Cicis realleges each of the foregoing paragraphs.

242.    The facts stated above demonstrate a substantial likelihood Cicis will prevail

on the merits of its claims, particularly Cicis claims for trademark infringement, trademark dilution, misappropriation of trade secrets, and breach of provisions of the Franchise Agreement.

243.   Cicis has no adequate remedy at law to remedy Mr. Word's and Ton of Pizza's unlawful conduct.

244.   As a result of Mr. Word's and Ton of Pizza's actions, Cicis is suffering and will continue to suffer irreparable injury if Mr. Word and Ton of Pizza are not restrained from continuing their unlawful conduct, and the injury is immediate and imminent.

245.   Mr. Word's and Ton of Pizza's continued unlawful conduct – after notification by Cicis that such conduct was in violation of law and that failure to cease and desist would result in formal legal action – evinces a knowing, intentional, and malicious intent to continue their unlawful conduct.

246.   The threatened injury to Cicis Marks and Cicis System and the goodwill associated with them, and the threatened injury to Cicis from loss/misappropriation of trade secrets, outweighs any damage injunctive relief might cause Mr. Word and Ton of Pizza – who have absolutely no right to operate their restaurant at the location and in the manner in which they are continuing to do so.

247.   Issuance of injunctive relief against Mr. Word and Ton of Pizza will not disserve the public interest.  To the contrary, the public interest is served by protecting trade secrets.   Furthermore, injunctive relief to protect Cicis trademarks and trade dress is specifically authorized by the Franchise Agreement and the Lanham Act.  *See* Exhibit A at § X.D.

## CONDITIONS PRECEDENT

248.    All conditions precedent have been performed or have occurred, and Cicis is therefore entitled to recover on all claims asserted herein.

## REQUEST FOR ATTORNEYS' FEES

249.    Cicis realleges each of the foregoing paragraphs.

250.    Due to Defendants' conduct described herein, Cicis was required to retain the undersigned legal counsel to institute and prosecute this action.

251.    Cicis is entitled to recovery of its reasonable attorneys' fees and costs pursuant to the Lanham Act, *e.g.*, 15 U.S.C. § 1117(a)(3) and (b), the Florida Deceptive and Unfair Trade Practices Act, the Florida Uniform Trade Secrets Act, the Registration and Protection of Trademarks Act, and Section XVIII.F of the Franchise Agreement.

## PRAYER AND REQUESTED RELIEF

WHEREFORE, for all of the foregoing reasons, Cicis respectfully requests the following relief:

1.    A preliminary injunction and permanent injunction restraining and enjoining Defendants and all persons in active concert or participation with them as follows:

a.    requiring the immediate return to Cicis of any and all Cicis confidential information, trade secrets or other Cicis proprietary information in their possession, custody, or control, including any copies thereof, in whatever form or medium;

b.    requiring the immediate cessation of the businesses located at 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida, and 2448 Volusia Ave.,

Orange City, Florida, operating as a restaurant which offers as a primary menu item or mix of menu items pizza and other Italian foods;

c.  requiring the immediate de-identification of the business located at 2448 Volusia Ave., Orange City, Florida as a Cicis Pizza restaurant and the immediate removal of all Cicis Marks therefrom;

d.  prohibiting the use in any manner of Cicis Marks, Cicis System, Cicis confidential information, trade secrets or trade dress – both in its individual components and in its integration of components;

e.  prohibiting the use in any manner of any marks, system, or trade dress confusingly similar to Cicis Marks, Cicis System, or Cicis trade dress;

f.  prohibiting the disclosure in any manner to any person of Cicis trade secrets, confidential information, or any information concerning Cicis System or other Cicis proprietary information, knowledge or know-how concerning Cicis methods of conducting the pizza restaurant business, or Cicis methods and techniques of establishing and operating a Cicis Pizza restaurant;

g.  enjoining and prohibiting Mr. Word, Mr. Johnson, Ton of Pizza and FWM, their agents, servants, employees, and all other persons in privity or acting in concert with them, from directly or indirectly, for themselves, or through, on behalf of or in conjunction with any person, persons, partnership, limited liability company, corporation of any other entity of association, doing any of the following for a period of

two years from the dates of termination of the Franchise Agreements:

i. diverting, or attempting to divert, any business or customer of Cicis or the former Cicis Store No. 194 or former Cicis Store No. 202 to any competitor (including but not limited to any restaurant owned, operated, aided, assisted, or supported by Mr. Word, Mr. Johnson, Ton of Pizza or FWM or anyone in conjunction with them), by direct or indirect inducement or otherwise, or doing or performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Cicis Marks and the Cicis System;

ii. employing, or seeking to employ, any person who was employed by Cicis or any other Cicis Franchisee as of the dates of termination of the Franchise Agreements or was so employed within the preceding sixty (60) days, or otherwise directly or indirectly inducing such person to leave that person's employment; and

iii. (except with respect to facilities operated under valid Franchise Agreements with Cicis), owning, maintaining, operating, engaging in, being employed by or having any financial or beneficial interest in (including any interest in limited liability companies, corporations, partnerships, trusts, unincorporated associations or joint ventures), advising, assisting, aiding,

making loans to, or otherwise supporting any business that (i) is of a character and concept similar to Cicis brand food service facilities, including a business which offers as a primary menu item or mix of menu items pizza (including, but not limited to, fresh, frozen or unbaked pizza) and other Italian foods using the distribution methods (including dine-in, carry-out or catering) or (ii) functions as a commissary to sell or lease to or supply any such business, and which is located, or is intended to be located, at or within a 20-mile radius of (i) 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida 32935 or (ii) 2448 Volusia Ave., Orange City, Florida or (iii) any Cicis brand food service facility in existence or under construction as of the dates of termination of the Franchise Agreements.

h.      requiring Defendants, within forty-eight (48) hours of the date of the initial grant of a temporary restraining order or injunctive relief, to provide Cicis with an itemized list of all materials bearing the Cicis Marks or any of Cicis distinctive markings, designs, labels, or other marks thereon, whether located on the premises located at 1270 N. Wickham Rd, Ste. 46-47, Melbourne, Florida, or on the premises located at 2448 Volusia Ave., Orange City, Florida, or under Defendants' control at any other location; and

i.      pursuant to 15 U.S.C. § 1116(a), requiring Defendants, within thirty

(30) days of the date a preliminary injunction is entered, to file with the Court and serve on Cicis a report in writing under oath setting forth in detail the manner and form in which the Defendants have complied with the injunction.

2.      Awarding to Cicis as provided under 15 U.S.C. § 1117(a), all damages to which Cicis is entitled, including without limitation:

   a.      Defendants' profits; or

   b.      Cicis actual damages, including, *e.g.*, lost profits, valuable goodwill, and royalties, expenses incurred in counteracting the effects of Defendants' use of Cicis trademarks and trade dress, etc., and;

   c.      as provided under 15 U.S.C. § 1117(b), treble damages for three times (a) Defendants' profits; or (b) Cicis actual damages, whichever is greater;

   d.      or, alternatively, as provided in 15 U.S.C. § 1117(c)(2), statutory damages of $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed; and

   e.      punitive and statutory damages as allowed by applicable law.

3.      Awarding to Cicis all amounts due and owing under the Franchise Agreement, together with its reasonable attorneys' fees and costs pursuant to Section XVIII.F of the Franchise Agreement.

4.      Awarding to Cicis Liquidated Damages provided for under the Franchise Agreement in the amount of $7,414.00 for termination of the Cicis Store No. 194's Franchise

Agreement and $9,756.00 for termination of the Cicis Store No. 202's Franchise Agreement, together with its reasonable attorneys' fees and costs pursuant to Section XVIII.F of the Franchise Agreement.

5.      Prejudgment interest, as provided in 15 U.S.C. § 1117(b) at an annual rate of interest established under 26 U.S.C. § 6621(a)(2), commencing on the date of the service of Plaintiff's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the Court deems appropriate.

6.      Awarding recovery of Cicis reasonable attorneys' fees and costs pursuant to the Lanham Act, *e.g.*, 15 U.S.C. § 1117(a)(3) and (b).

7.      Awarding all damages, including reasonable attorneys' fees and costs, recoverable under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.2105 *et seq.*

8.      Awarding all damages recoverable under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*

9.      Awarding all damages, including reasonable attorneys' fees and costs, recoverable under the Registration and Protection of Trademarks Act, Fla. Stat. § 495.001, *et seq.*

10.     Awarding recovery of Cicis' reasonable attorneys' fees and costs pursuant to Section XVIII.F of the Franchise Agreements.

11.     Awarding Cicis all other relief, in law or equity, to which it is entitled.

## **VERIFICATION**

STATE OF TEXAS          )
                        )
COUNTY OF DALLAS        )

I, Rebecca M. Minor, being duly sworn according to law, depose and say as follows:

1. I am the Director of Legal Affairs of CiCi Enterprises, LP ("CiCi's"). I am authorized to make this verification on behalf of CiCi's, the plaintiff in this matter.

2. I have reviewed the Verified Complaint in this action and the Exhibits attached thereto.

3. The allegations of the Verified Complaint are true and correct based on my personal knowledge or knowledge I have obtained via a review of CiCi's' records as kept in the ordinary course of business.



NOTARY PUBLIC
MARY E COOPER
Notary ID # 130549423
My Commission Expires
February 22, 2020

Print name: _Rebecca Minor_

Sworn and subscribed to before me this 26th day of September, 2016.

_____
NOTARY PUBLIC